No. 13,396.

STATE OF LOUISIANA VS. HARRY SEIPEL.

SYLLABUS.

An indictment for obtaining money under false pretences which in substance
avers, that the accused did unlawfully, falsely and designedly pretend that
he had certain monies deposited to his credit in bank, against which he
could draw a check, and upon which he did draw a check on which he
obtained money, is sufficient averment, notwithstanding it does not allege
that the check was presented and payment refused, it being averred that
the accused had no money deposited, or to his credit in bank, nor any
monies therein upon which he could draw a check; and that same was a
false pretence, as the accused well knew at the time, and that by means
of said false pretence he did then and there feloniously and unlawfully
obtain the sum of money named.

APPEAL from the Nineteenth Judicial District, Parish of Iberia.
*Voorhies, J.*

*Milton J. Cunningham,* Attorney General, and *James Simon,* District Attorney, (*Charles M. Cunningham,* of Counsel,) for Plaintiff, Appellee.

---

*Todd & Davis* for Defendant, Appellant.

---

The opinion of the court was delivered by

WATKINS, J. The defendant was tried and convicted of a charge of obtaining money under false pretences, and sentenced to imprisonment in the State penitentiary for twelve months; and from that verdict and sentence, he prosecutes this appeal.

The charge with which the defendant stands indicted was, for securing fifty dollars in currency on his check on the State National Bank of New Iberia; and the grounds upon which his counsel rely for a reversal of the sentence, are, in substance; (1) That the indictment does not charge that the defendant claimed to have money in the bank at the time he drew the check; but, on the contrary, it expressly states that he claimed to *have had* money there.

That the indictment fails to state in whose favor the check was drawn, or that the check was endorsed to party claiming to have been defrauded, or that the check was presented at the bank and refused payment.

At the incipiency of the proceedings, and before the jury was empanelled, defendant's counsel filed a motion to quash the indictment; from which we make the following extract, to-wit:

1. "That there is no allegation therein that the defendant pretended to the said Wallet"—the party named in the indictment as the person upon whom the fraud was practiced—"that he had any money in the State Bank of New Iberia at the time the check was drawn; nor is it " alleged that he pretended that said check was at the time good, or " that it would be paid.

2. "Because all pretences, even if false, that defendant *had had* " money in the State Bank of New Iberia, and not that he *then* had " money, could not mislead.

3. "That it is not alleged that the said check was drawn in favor of " Wallet, nor endorsed to him, nor that it was signed by the defendant, " nor that it was delivered to him when the money is alleged to have " been obtained; but that, on the contrary, it is alleged that he pre-

" tended he did give said check to Wallet at a time not stated in the " indictment; and that said allegation is a mere allegation of a promise, " and not of a false pretence.

4. "That there is no allegation that defendant intended to defraud " Wallet of the said money; and that an allegation or attempt to " defraud without alleging anything to defraud out of the very money " in question, will not support the indictment for obtaining money " under false pretences.

5. "That there is no allegation as to ownership of the money in " question; that while the said indictment alleges something not " therein specified to be the property of Wallet, it does not state that " said money belonged to him."

For the foregoing reasons, the motion shows that the indictment is insufficient, and should be quashed.

This motion was subsequently tried and overruled, and to the ruling of the court counsel retained a bill of exceptions.

The following is an extract from the indictment, to-wit:

"That one, Harry Seipel * * * on the 9th day of September, " 1899, * * * devising and intending to cheat and defraud one " Walter J. Wallet of his money, goods and chattels, unlawfully did " falsely and designedly pretend to the said Walter J. Wallet, that he " had certain monies deposited and to his credit in the State Bank of " New Iberia, which said bank is situated and located in the town of " New Iberia, against which he could draw sight drafts; and that he " desired him, Walter J. Wallet, to let him have the sum of fifty " dollars, for which he would give him, the said W. J. Wallet, the sight " draft drawn by him on said State Bank, and against said fund in the " said State Bank of New Iberia * * * for said sum of fifty " dollars; which he, the said Henry Seipel did then and there draw and " execute against said State Bank of New Iberia for the said sum of " fifty dollars, and on which he secured the said sum of fifty dollars " from the said W. J. Wallet; whereas, in truth and in fact the said " Harry Seipel had no monies deposited or to his credit in the said " Bank of New Iberia, nor any monies therein upon which he could " draw sight drafts, which said pretences, he the said Harry Seipel " then and there well knew to be false, and by color and means of which " said false pretences, he the said Harry Seipel did then and there " feloniously and unlawfully obtain from the said Walter J. Wallet,

"the sum of fifty dollars, lawful currency of the United States of "America, and thereupon gave to said W. J. Wallet the said draft for "said sum drawn against said State Bank against monies he pretended "to have had in said bank, being then and there the property of said "Walter J. Wallet, with intent to cheat and defraud him, the said "Walter J. Wallet to the great damage of said Walter J. Wallet, etc."

The motion to quash proceeds upon the theory, mainly, that the indictment fails to aver that the defendant claimed that he had any money in the State Bank of New Iberia at the time the check was drawn; and that it is not alleged therein that the defendant pretended that the check given to Walter J. Wallet was good at the time it was given, or that it would be paid.

The extract made from the indictment clearly shows this is a mistake, as the same, in terms, declares, that the defendant did "unlaw-"fully, falsely and designedly pretend to the said Walter J. Wallet "that he had certain monies deposited and to his credit in the State "Bank of New Iberia  *  *  *  against which he could draw sight "drafts;" and it further declares, that he "desired him, the said Walter J. Wallet, to let him have the sum of fifty dollars for which he would give him, the said W. J. Wallet, a sight draft drawn by him on said State Bank and against said fund in the said State Bank of New Iberia,  *  *  *  for the sum of fifty dollars, which he, the said Harry Seipel, did then and there draw and execute against said State Bank of New Iberia for fifty dollars, and on which he secured the said sum of fifty dollars from the said W. J. Wallet."

True it is that there is no averment in the indictment, in terms, to the effect that the check was good, or that it would be paid; but the substantial allegation is made that he had funds in the bank on which he could draw and that he obtained the money upon a check he did draw on the bank, and which sum the said Wallet parted with upon the representations made.

The averment of the motion, that it is not alleged in the indictment that "the said draft was drawn in favor of Wallet nor endorsed to him, nor that it was signed by the defendant, nor that it was delivered to Wallet when the money is alleged to have been obtained, "is, likewise, disproved by the language of the indictment above quoted, which is to the effect: "That he (defendant) desired him, the said Walter J. Wallet, to let him have the sum of fifty dollars, for which he would

give him, the said Walter J. Wallet, a sight draft drawn by him (defendant) on said State Bank, and against the said fund in the said State Bank of New Iberia." It, also, contradicts the statement of the motion, that it is not alleged that the draft "was delivered to him (Wallet) when the money is alleged to have been obtained," as is shown by the averment that "the said Harry Seipel, did then and there feloniously and unlawfully obtain from the said Walter J. Wallet, the sum of fifty dollars, lawful currency of the United States of America, and thereupon gave to said W. J. Wallet the said sight draft for said sum drawn against said State Bank."

The language of the indictment likewise negatives the averment of the motion, to the effect "that there is no allegation that defendant intended to defraud him of the said money."

For, it avers, "that Harry Seipel * * * unlawfully, feloniously and designedly, pretended to the said Walter J. Wallet, that he had certain monies deposited and to his credit in the said State Bank of New Iberia * * * whereas, in truth and in fact, the said Harry Seipel had no monies deposited to his credit in the said State Bank of New Iberia, nor any monies therein upon which he could draw sight drafts, which said pretences, he, the said Harry Seipel, then and there well knew to be false; by color and means of which said false pretences, he, the said Harry Seipel, did then and there feloniously and unlawfully obtain from the said Walter J. Wallet, the sum of fifty dollars."

The point taken in the motion to quash, to which attention was chiefly directed in the argument is, that "all pretences, even if false, that defendant *had had money in the State Bank of New Iberia,* and not that he *then* had said money, could not mislead."

The averment in the indictment to which that objection is directed, is as follows:

"By color and means of which said false pretences, he, the said Harry Seipel, did then and there feloniously and unlawfully obtain from the said Walter J. Wallet, the sum of fifty dollars, lawful currency of the United States of America; and thereupon gave to said Walter J. Wallet, the said sight draft for said sum drawn against said State Bank against the monies he pretended *to have had* in said bank, being then and there the property of said Walter J. Wallet, with intent to cheat and defraud him, the said Walter J. Wallet."

Whilst somewhat inartistically stated, the language of the indictment

evidently relates to the date at which the draft or check was executed by the defendant to W. J. Wallet and against funds he pretended *to have had* in the bank *at the time;* and taken in that sense, the argument pressed upon our attention is not admissible.

A careful scrutiny of the indictment, in connection with the motion to quash, has satisfied us that it is sufficient in law to support the charge preferred against the defendant, and that the motion to quash was properly overruled.

Defendant's counsel complains of the refusal of the trial judge to give the following requested special charge, to-wit:

"That the jury must be satisfied that the accused got the money under false pretences, and the mere giving of a check on which the money was obtained without the false pretence that there was money in the bank to meet the check, is not sufficient evidence to support a conviction."

The reasons assigned by the judge for refusing to give the special charge, are as follows, viz:

. "The court had charged the jury and repeated to them, that there must be a false representation by words written or spoken to constitute a false pretence; that is, words used by the offender or accused himself, or used by another and assented to by him; that the intention to defraud is essential to constitute the offence of obtaining money under false pretences. That this intent is a question of fact for the jury and inseparable from a deliberate act, and the circumstances surrounding the act."

While it is true that the reasons of the judge for refusing the special charge requested, are not quite clear, yet we think them sufficiently responsive to meet the exigencies of the case.

The *gravamen* of the charge asked was, that the jury must be satisfied that the accused got the money under false pretences; and that is the question to which the judge directed the attention of the jury in a general charge to which he referred.

. True it is that the charge requested goes a little further and refuses the correlative request that the jury be instructed, "that the mere giving of a check on which the money was obtained without the false pretence that there was money in the bank to meet the check, is not sufficient evidence to support the conviction;" but this, to our thinking, is opposed in meaning and in terms to the first part of said requested

special charge, to the effect that "the jury must be satisfied that the accused got the money under false pretences."

We feel sure, that under the circumstances related, the giving of the special charge requested to the jury subsequent to the giving of the general charge would have had the effect of confusing, instead of enlightening their minds. The simple statement that the jury must be satisfied that there was a false representation by words spoken by the accused, or assented to by him, whereby the party receiving the check was deceived and parted with his money upon such representations, is deemed sufficient for all necessary purposes; and we, therefore, affirm the ruling of the trial judge in this respect.

Counsel for the accused made an application for a new trial, based mainly on the ground, that the verdict was contrary to law and the evidence; but the motion also gives a partial analysis of the testimony adduced at the trial. This motion was submitted and overruled by the trial judge, and counsel reserved a bill of exceptions to his ruling.

From the bill of exceptions we make the following extract:

"The court, in giving reasons for overruling said motion, declared, as a basis for such decision, that a motion for a new trial, based merely on the ground that the verdict of the jury was contrary to the law and the evidence, should not be considered by the trial judge, and should not be granted. The court further declaring in overruling said motion that the Supreme Court had so decided."

The bill of exceptions was signed by the trial judge, but no reasons were given for overruling the motion.

In our opinion, he was under an erroneous impression as to what this court had decided; and we take it for granted that it was the result of simple inadvertence on his part. This court has frequently held that as it did not have constitutional jurisdiction to examine the facts adduced on the trial of a criminal case, it could not review facts of a case, or a motion for new trial based on the ground that the verdict was contrary to the law and evidence; but it has not decided that the trial judge could not do so. On the contrary, the special province of the trial judge is to supervise the trial and pass upon motions for a new trial, for the purpose of determining whether the verdict was responsive to the law and evidence or not.

Entertaining this view, we deem it our duty to reverse the judgment and sentence pronounced against the defendant, and remand the case

to the said court below, with instructions to the trial judge to entertain and decide the motion for new trial; but not to interfere otherwise with the trial and disposition of the case.

It is, therefore, ordered and decreed, that the judgment and sentence pronounced against the defendant be annulled and reversed; and that the cause be remanded to the court below with instructions to the trial judge to examine and decide the motion for a new trial. And, it is further ordered that the verdict of the jury and other proceedings in the case be left undisturbed, pending the action of the trial judge upon the motion for a new trial.

Rehearing refused.